UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW V. SALINAS,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>KENNETH J. POGUE, et al.,<br><br>　　　　　Defendants. | 1:16-cv-00520-DAD-GSA-PC<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE PROCEED ON PLAINTIFF'S ADA CLAIMS AND RELATED STATE LAW CLAIMS AGAINST DEFENDANTS GOMNESS AND PALMER, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED**<br><br>**OBJECTIONS, IF ANY, DUE IN 14 DAYS** |

**I.　BACKGROUND**

Matthew V. Salinas ("Plaintiff") is a prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. On April 14, 2016, Plaintiff filed the Complaint commencing this action. (ECF No. 1.)

On November 17, 2016, Plaintiff filed the First Amended Complaint as a matter of course. (ECF No. 25.) On February 22, 2017, the Second Amended Complaint was filed pursuant to Plaintiff's motion for leave to amend. (ECF No. 29.) The court screened the Second Amended Complaint and issued an order on September 21, 2017, requiring Plaintiff to either file a Third Amended Complaint or notify the court that he is willing to proceed with the claims found cognizable by the court. (ECF No. 32.) On January 17, 2018, Plaintiff filed the Third Amended Complaint, which is now before the court for screening. (ECF No. 44.)

**II.　SCREENING REQUIREMENT**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

1

The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

### III. PLAINTIFF'S ALLEGATIONS

Plaintiff is presently incarcerated at the Lerdo Pre-trial Facility in Bakersfield, California. The events at issue in the Third Amended Complaint allegedly occurred at Avenal State Prison (ASP) in Avenal, California, when Plaintiff was incarcerated there as a state prisoner, in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff names as defendants C. Herrera (Associate Warden and ADA Appeal Coordinator, ASP), Correctional Officer (C/O) K. Gomness, and C/O N. Palmer (ASP employees) (collectively, "Defendants").

Plaintiff's allegations follow. Since approximately July 2011, Plaintiff has suffered from nerve pain in his lower back, hip, and right leg, and chronic lower back pain. This is due

to degenerative disk disease in Plaintiff's back, sciatica, and a torn adductor in his right leg. These injuries are severely painful and sometimes debilitating.

About January 2016, when Plaintiff was housed at Wasco State Prison, he was examined by Doctor A. Klang [not a defendant] who placed Plaintiff on the Disability Placement Program (DPP) and prescribed Plaintiff medical appliances, including a cane and a mobility impaired vest. Dr. Klang identified Plaintiff as having a qualified disability under Title II of the Americans with Disabilities Act ("ADA"). In February 2016, an unidentified doctor prescribed Plaintiff a walker to help him with mobility issues.

On February 25, 2016, Plaintiff was transferred to ASP and upon arrival was seen by medical staff and identified as having a qualified disability under the ADA.

The Defendants knew or should have known about Plaintiff's disabilities because all identified qualifying disabilities are made part of the inmate's records which are available to all custody and medical staff. Plaintiff's mobility impaired vest also identified him as having a disability. Plaintiff used his prescribed medical appliances to aid him and keep him safe. Since February 25, 2016, Defendants have been aware of Plaintiff's disabilities and his need for his prescribed medical appliances.

About March 1, 2016, Plaintiff was taken before the UCC[1] for assignment to an educational program. The location of the program was behind a wall, not on D-yard. To get there, Plaintiff needed to pass through D-yard work change offices (work change), a controlled access room with an upright walk-through metal detector, and a room for strip searches.

On March 8, 2016, Plaintiff began the program arriving at the work change office at about 7:00 a.m. Plaintiff arrived wearing his mobility impaired vest and using his walker. Defendant C/O Gomness asked Plaintiff if he could walk unaided through the metal detector. Plaintiff said no, that he could not do so safely. C/O Gomness said that he would need to call his sergeant to get an accommodation to allow Plaintiff to bypass the metal detector and that he would call Plaintiff back to work change afterward. About an hour later Plaintiff was called

---

[1] Unit Classification Committee

back to work change. C/O Gomness told him that he had received the accommodation from an unidentified sergeant, allowing the use of a hand-held metal detector in compliance with the ADA and Armstrong Remedial Plan, but only upon Plaintiff's return to D-yard through work change. Plaintiff was processed and went to his program. When Plaintiff returned after the program, C/O Gomness used the accommodation procedures again to process Plaintiff through work change to D-yard.

When an inmate is processed through work change into an educational program, staff must process the inmate, but the Education Department keeps attendance records for inmates, like Plaintiff, who were earning college credits.

Upon Plaintiff's return to D-yard work exchange, C/O Gomness told Plaintiff, "I got better things to do [than] cater to you." (ECF No. 44 at 9:4-5.) C/O Gomness then used the new accommodation procedures to process Plaintiff through D-yard work change.

That same day C/O Gomness worked overtime in Plaintiff's housing unit. Upon Plaintiff's return to his housing unit 420, Plaintiff elected to use his lighter, easier-to-use wooden cane, which Plaintiff only used when he also had access to his walker and his bed to rest his injuries. After the p.m. meal, C/O Gomness called Plaintiff into the office and asked him why he could use his cane to go to yard and around the housing unit but not to his educational assignment. Plaintiff thought this line of questioning was beyond C/O Gomness's scope of employment as Gomness was not medical staff, but Plaintiff elected to try explaining his reasoning. Plaintiff explained that depending on his access to his walker, bunk area, and level of pain, Plaintiff sometimes chose to use the cane, but at all times when he was off the yard Plaintiff needed to use his walker. Plaintiff offered to show C/O Gomness his medical chronos if needed.

Gomness used disability-based discrimination in violation of the ADA by singling out Plaintiff for this interview, harassing Plaintiff solely because of his use of medical appliances

///

4

due to his disabilities. Gomness also submitted a chrono[2] on Plaintiff regarding his use of medical equipment.

On March 9, 2016, at about 7:00 a.m., Plaintiff arrived at work change to be processed through to his educational program. Defendants C/O Gomness, C/O P. Palmer, and other officers were there waiting to process inmates through. As part of Plaintiff's accommodation, Plaintiff would only be wanded upon his return to work change from his educational program, but not when going to his program.

Plaintiff was stopped by defendants C/O Gomness and C/O Palmer when he entered D-yard work change wearing his vest and using his walker. C/O Gomness told Plaintiff, "Either your [*sic*] gonna walk through the metal detector without your walker or your [*sic*] not coming through!!" (ECF No. 44 at 11 ¶30.) Plaintiff was confused because just the day before he had received the accommodation from defendant Gomness himself. Plaintiff told defendants Gomness and Palmer that he did not feel safe attempting to walk unaided through the metal detector. Defendant Palmer told Plaintiff, "Then your [*sic*] not coming through here." (Id. ¶32.) Defendant Gomness ordered Plaintiff to return to D-yard. (Id.) Defendants Gomness and Palmer denied Plaintiff access to his program based solely on his disability.

Plaintiff returned to his housing unit. At about 9:00 a.m., Plaintiff was called to medical where he was seen by Dr. Hitchman [not a defendant], who told Plaintiff he had received three separate phone calls that day regarding Plaintiff's medical appliances and the possibility of rescinding his prescriptions for them. Dr. Hitchman would not say the names of the parties who called, but did say that one of the calls had come from D-yard work change. While examining Plaintiff, Dr. Hitchman told him that due to these phone calls he was seeing Plaintiff three weeks earlier than Plaintiff's original appointment with him. Dr. Hitchman rescinded all of Plaintiff's prescribed medical equipment, which was confiscated by medical the following day, March 10, 2016.

---

[2] "A 'chrono' is a collection of informal notes taken by prison officials documenting medical orders." Akhtar v. Mesa, 698 F.3d 1202, 1205 n.1. (9th Cir. 2012).

Plaintiff was left in severe pain with no pain management or medical equipment to assist him. He was forced to use CDCR Forms 1984 and Health Care Appeals Form HC-602, to request reasonable accommodations under the ADA. Plaintiff repeatedly requested to be re-prescribed his equipment, to be re-examined by a back specialist or third-party doctor, and to be given an MRI to diagnose his injuries in an attempt to prove the source of his medical complaints, but none of this was done.

On March 24, 2016, Plaintiff was called to an interview by the Reasonable Accommodation Panel (RAP), which was attended by defendant Herrera (Associate Warden) and two unidentified women from medical. Plaintiff, up to this point, had not received responses to any of his submitted forms, and the interview had not been requested by Plaintiff, the ADA, or the Armstrong Remedial Plan.

Defendant Herrera told Plaintiff that the reason he was called to this interview was to help Plaintiff better understand the 1824 Request process, because he had submitted "excessive" CDCR 1824 forms and CDCR HC-602 forms. (ECF No. 44 at 14 ¶41.) To Plaintiff's knowledge no other inmate had ever been called to appear before the RAP and interviewed for this reason. At no time during the interview did defendant Herrera, or either of the two women from medical, offer to help Plaintiff with filling out or submitting these forms.

Plaintiff told Herrera and the two women that in fact there was no rule limiting the number of 1824 forms an inmate could submit, and if Herrera would look in CCR Title 15, she could see for herself. Herrera became upset at Plaintiff and started verbally attacking and threatening Plaintiff with comments like, "You're not making any friends here," "You need to shut up and listen to what I'm telling you," and "Do you think I'm an idiot?" (Id. at 16 ¶¶43.) Plaintiff stated, "I don't call the pot black," in response to Herrera's question. (Id.) Defendant Herrera threatened Plaintiff with Rules Violation Reports, and Plaintiff informed Herrera that he did not come to the interview to be harassed. Plaintiff stated that he was done with the interview and requested to leave.

The interview on March 24, 2016, was intended to dissuade Plaintiff from using the CDCR 1824 Reasonable Accommodation Request system through fear and intimidation.

The RAP found "no evidence of a learning disability" in Plaintiff's records, and also found that the RAP was not using "effective communication" with Plaintiff until after March 2016. (ECF No. 44 at 17 ¶47.) Defendants continued to subject Plaintiff to attempts at intimidation, abuse, and disability based discrimination and harassment in apparent retaliation for Plaintiff's use of the 1824, 602, and HC-602 processes. Plaintiff suffered denial of access to programs and services, benefits of programs and services, and exclusion from participating in programs and services of a public entity due to a disability. Plaintiff also suffered emotional distress and was subject to disability-based discrimination and harassment.

Plaintiff requests monetary damages, including punitive damages, attorney's fees, and costs of suit.

## IV. PLAINTIFF'S CLAIMS

### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the

meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

**B.     Americans with Disabilities Act (ADA) Claim**

Plaintiff claims that Defendants violated his rights under the ADA by refusing to provide him with reasonable accommodations.

**1.     Legal Standards**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II authorizes suits by private citizens for money damages against public entities, United States v. Georgia, 546 U.S. 151, 153 (2006), and state prisons "fall squarely within the statutory definition of 'public entity,'" Pennsylvania Dept. of Corrs. v. Yeskey, 524 U.S. 206, 210 (1998).

"Generally, public entities must 'make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.'" Pierce v. County of Orange, 526 F.3d 1190, 1215 (9th Cir. 2008) (quoting 28 C.F.R. § 35.130(b)(7)). The state is responsible for providing inmates with "the fundamentals of life, such as sustenance, the use of toilet and bathing facilities, and elementary mobility and communication," and as such, the

ADA requires that these "opportunities" be provided to disabled inmates "to the same extent that they are provided to all other detainees and prisoners." Armstrong v. Schwarzenegger, 622 F.3d 1058, 1068 (9th Cir. 2010); see also Pierce, 526 F.3d at 1220 (finding ADA violation where defendant failed to articulate "any legitimate rationale for maintaining inaccessible bathrooms, sinks, showers, and other fixtures in the housing areas and commons spaces assigned to mobility—and dexterity-impaired detainees").

In order to state a claim that a public program or service violated Title II of the ADA, a plaintiff must show: (1) he is a "qualified individual with a disability;" (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004); see also Lee v. City of Los Angeles, 250 F.3d 668, 691 (9th Cir. 2001) ("If a public entity denies an otherwise 'qualified individual' 'meaningful access' to its 'services, programs, or activities' 'solely by reason of' his or her disability, that individual may have an ADA claim against the public entity.").

Furthermore, "[t]o recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant." Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). The standard for intentional discrimination is deliberate indifference, "which requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139. The ADA plaintiff must both "identify 'specific reasonable' and 'necessary' accommodations that the state failed to provide" and show that the defendant's failure to act was "a result of conduct that is more than negligent, and involves an element of deliberateness." Id. at 1140.

### 2. Appropriate Defendants in ADA Actions

The proper defendant in an ADA action is the public entity responsible for the alleged discrimination. Georgia, 546 U.S. at 153. State correctional facilities are "public entities" within the meaning of the ADA. See 42 U.S.C. § 12131(1)(A) & (B); Yeskey, 524 U.S. at 210; Armstrong v. Wilson, 124 F.3d 1019, 1025 (9th Cir. 1997). However, a state official sued in

her official capacity is, in effect, a suit against the government entity and is an appropriate defendant in an ADA action. See Applegate v. CCI, No. 1:16–cv–1343 MJS (PC), 2016 WL 7491635, at *5 (E.D. Cal. Dec. 29, 2016) (citing Miranda B. v. Kitzhaber, 328 F.3d 1181, 1187–88 (9th Cir. 2003); Kentucky v. Graham, 473 U.S. 159, 165 (1985)).

Ordinarily, a plaintiff is not entitled to monetary damages against defendants in their official capacities. Aholelei v. Department of Public Safety, 488 F.3d at 1144, 1147 (9th Cir. 2007) ("The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities."). However, the Eleventh Amendment does not bar ADA or RA suits against state officials in their official capacities for injunctive relief or damages. See Phiffer v. Columbia River Corr. Inst., 384 F.3d 791, 792–93 (9th Cir. 2004).

### 3. Discussion

The ADA, as amended in 2008, defines a disability, with respect to an individual, as "a physical or mental impairment that substantially limits one or more major life activities of such an individual." 42 U.S.C. § 12102(1)(A). The court finds that Plaintiff has adequately alleged that he is disabled under the ADA.

Here, Plaintiff brings claims against Defendants in their individual and official capacities. Because individual liability is precluded under Title II of the ADA, any claim Plaintiff might intend to make under the ADA against Defendants as individuals is not cognizable. However, Plaintiff may proceed under the ADA against Defendants in their official capacities. Title II authorizes suits by private citizens for money damages against public entities that violate § 12132. See 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794a). Georgia, 546 U.S. at 154.

#### i. Defendant Herrera

Plaintiff fails to state a cognizable claim under the ADA against defendant Herrera because Plaintiff has not alleged facts showing that defendant Herrera excluded him from participation in, or denied him benefits, *because* of his disability. Under the allegations, defendant Herrera met with Plaintiff and told him that he was filing "excessive" CDCR 1824

forms and CDCR HC-602 forms. (ECF No. 44 at 14 ¶41.) There are no facts alleged under which the court can infer that defendant Herrera acted against, or discriminated against, Plaintiff by reason of his disability. Therefore, the court finds that Plaintiff fails to state an ADA claim against defendant Herrera.

### ii. **Defendants Gomness and Palmer**

The court finds that Plaintiff states cognizable claims under the ADA against defendants Gomness and Palmer in their official capacities for denying Plaintiff a reasonable accommodation for his disability by excluding him from participation in the educational program. The court also finds that Plaintiff has demonstrated that defendants Gomness and Palmer intentionally discriminated against him, acting with deliberate indifference because they knew that a harm to a federally protected right was substantially likely, and they failed to act upon that likelihood. Therefore, the court finds that Plaintiff states cognizable claims for intentional discrimination under the ADA against defendants Gomness and Palmer.

### C. **Retaliation**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)).

///

The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

Plaintiff alleges that Defendants subjected him attempts at intimidation, abuse, and disability-based discrimination and harassment, "in apparent retaliation for Plaintiff's use of the 1824, 602, and HC-602 processes." (ECF No. 44 at 17-18 ¶48.) An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Plaintiff has satisfied the first element of a retaliation claim because intimidation and abuse are unquestionably adverse actions, although Plaintiff should specify how Defendants used intimidation and were abusive of him. Plaintiff has also satisfied the third element, because he used the 602 appeals system. However, there are no facts linking Defendants' adverse actions with Plaintiff's 602 appeals. Plaintiff has not alleged *facts* linking intimidation or abuse by any named Defendant with Plaintiff's filing of a prison grievance or appeal. Speculation that an adverse action "apparently" occurred because of 602 appeals does not show the requisite connection. Moreover, Plaintiff fails to allege that the retaliatory acts chilled his exercise of First Amendment rights or that there was no legitimate penological purpose for the adverse actions against him. Therefore, the court finds that Plaintiff fails to state a claim for retaliation.

### D. State Law Claims

Plaintiff alleges violations of the California Constitution. Plaintiff is advised that violation of state law is not sufficient to state a claim for relief under § 1983. Section 1983 does not provide a cause of action for violations of state law. See Galen v. Cnty. of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007). To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976); also see Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995); Gonzaga University v. Doe, 536 U.S. 273, 279 (2002). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367.

In this instance, the court has found cognizable ADA claims in the Third Amended Complaint against defendants C/O Gomness and C/O Palmer. Therefore, at this juncture, the court shall exercise supplemental jurisdiction over Plaintiff's state law claims that form part of the same case or controversy as Plaintiff's cognizable federal claim.[3]

### E. Attorney's Fees

Plaintiff seeks as relief monetary damages, attorney's fees, and costs of suit. With regard to attorney's fees, "In any action or proceeding to enforce a provision of section[] 1983 . . . , the court, in its discretion, may allow the prevailing party . . . reasonable attorney's fees . . . ." 42 U.S.C. § 1988(b). However, Plaintiff's contention that he is entitled to attorney's fees if he prevails is without merit. Plaintiff is representing himself in this action. Because Plaintiff is not represented by an attorney, he is not entitled to recover attorney's fees if he prevails. See Friedman v. Arizona, 912 F.2d 328, 333 n.2 (9th Cir. 1990), superseded by statute as state in Warsoldier v. Woodford, 418 F.3d 989 (9th Cir. 2005); Gonzalez v. Kangas, 814 F.2d 1411, 1412 (9th Cir. 1987); see also Rickley v. Cnty. of Los Angeles, 654 F.3d 950, 954 (9th Cir. 2011) ("The Court accordingly adopted a per se rule, categorically precluding an award of attorney's fees under § 1988 to a pro se attorney-plaintiff.") Therefore, Plaintiff is not entitled to attorney's fees if he prevails in this action.

## V.  CONCLUSION AND RECOMMENDATIONS

For the reasons set forth above, the court finds that Plaintiff states cognizable claims in the Third Amended Complaint against defendants C/O K. Gomness and C/O P. Palmer for violation of the ADA. However, Plaintiff fails to state any other claims against any of the Defendants upon which relief may be granted under the ADA or § 1983.

Plaintiff should not be granted leave to amend. The court previously granted Plaintiff leave to amend the complaint, with ample guidance by the court. The court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further

---

[3] At this stage of the proceedings, the court makes no determination about the viability of Plaintiff's state law claims.

leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Therefore, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1. This case proceed against defendants C/O K. Gomness and C/O P. Palmer in their official capacities on Plaintiff's claim for intentional discrimination in violation of the ADA;
2. All other claims and defendants be DISMISSED, for Plaintiff's failure to state a claim;
3. Defendant Herrera be DISMISSED from this case for Plaintiff's failure to state any claims against him;
4. Plaintiff's claim for retaliation be DISMISSED from this case for Plaintiff's failure to state a claim; and
5. This case be referred back to the Magistrate Judge for further proceedings, including initiation of service of process.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within fourteen (14) days** from the date of service of these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **February 16, 2018**                              **/s/ Gary S. Austin**
                                                                                      UNITED STATES MAGISTRATE JUDGE